IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

COREY MASON,

        Plaintiff,

                                     Civil Action 2:25-cv-00335
      v.                            Judge Douglas R. Cole
                                     Magistrate Judge Kimberly A. Jolson

HON. ROBERT GRILLO, et al.,

        Defendants.

## ORDER AND REPORT AND RECOMMENDATION

On April 2, 2025, the Court granted Plaintiff's motion for leave to proceed *in forma pauperis*. (Doc. 7). After that, Plaintiff moved for leave to amend his Complaint. (Doc. 9). He also filed several other motions. (Docs. 3, 4, 5, 6, 8, 10). The Undersigned **GRANTS** Plaintiff's Motion for Leave to File Amended Complaint (Doc. 9). But, after conducting an initial screen of Plaintiff's Amended Complaint under 28 U.S.C. § 1915(e), the Undersigned **RECOMMENDS** that it be dismissed. Consequently, Plaintiff's remaining motions (Docs. 3, 4, 5, 6, 8, 10) should be **DENIED**.

## I.      BACKGROUND

Plaintiff, an Ohio resident proceeding *pro se*, alleges Defendants violated his constitutional rights during juvenile and criminal court proceedings in Vinton County, Ohio. (Doc. 1-1 at ¶¶ 1–2; Doc. 9-1 at 2). Across his pleadings, he names twelve Defendants: Vinton County Judges Robert Grillo, Jeffrey Griffith, and Steven O. Williams; Vinton County prosecutor Amanda Miller; attorney Jorden Meadows; South-Central Ohio Job and Family Services ("SCOJFS"); guardian *ad litem* Chase Bunstine; Samantha Stilson; court-appointed attorney John Clark, Jr.; Supervisor of Vinton County Children Services at SCOJFS Missy Robson; SCOJFS caseworker Terry Hale; and Executive Director of Children Services at SCOJFS Lindsay Sparks. (Doc. 1-1 at ¶¶ 6–16; Doc.

9-1 at ¶ 17). Plaintiff's pleadings span hundreds of pages; the Court briefly summarizes his allegations. (*See* Doc. 1-1; Doc. 1-2; Doc. 1-3; Doc. 9-1; Doc. 9-2).

From 2014 to 2016, Plaintiff was in a romantic relationship with Defendant Stilson, who has four children. (Doc 1-1 at ¶¶ 17–18). In 2017, she lost custody of the children, who were placed in Plaintiff's care through a kinship program. (*Id.* at ¶¶ 19, 32). Then, in 2021, Defendant Judge Grillo granted Plaintiff and Defendant Stilson "50/50" custody of the children. (*Id.* at ¶ 34). Shortly after that, Plaintiff sought full custody. (*Id.* at ¶¶ 34–35).

The custody proceedings were delayed for some time. (*Id.* at ¶ 35). Then, at a 2023 hearing, Defendant Judge Grillo allegedly told Plaintiff that he has "never removed a mother's [custody] rights," and that he did "not plan to anytime soon." (*Id.* at ¶¶ 36–38). This statement, Plaintiff says, shows Defendant Judge Grillo's "clear gender bias against Plaintiff as a male caregiver." (*Id.* at ¶¶ 38–39). Eventually, on July 25, 2024, the Vinton County Juvenile Court granted full custody of the children to Defendant Stilson and "companionship rights" to Plaintiff. (*Id.* at ¶¶ 40, 42; Doc. 9-2 at 12). Even so, Plaintiff says Defendant Stilson did not allow him to see the children during his court-ordered time. (Doc. 1-1 at ¶¶ 44–45).

Custody changed again less than a month later. In August 2024, the Vinton County Juvenile Court granted temporary custody of the children to Defendant SCOJFS and found that Plaintiff "was no longer an appropriate custodian." (Doc. 1-3 at 6; Doc. 1-1 at ¶ 49). Then, on September 26, 2024, the juvenile court issued a no-contact order between Plaintiff, Defendant Stilson, and the children. (Doc. 9-2 at 12–13). After these rulings, Defendants SCOJFS and its employees, including Defendants Robson, Hale, Sparks, did not allow Plaintiff to see or speak to the children. (Doc. 1-1 at ¶¶ 50–54).

On September 26, 2024, Plaintiff was criminally charged with making "a false statement in the juvenile case." (*Id.* at ¶ 66; *see also* Doc. 1-3 at 13–14 (allegedly forged documents submitted in the child custody proceedings)). As of the filing of Plaintiff's case, the criminal case is ongoing.

Plaintiff alleges that, since then, Defendant Miller and Defendant Judge Griffith have coordinated the juvenile and criminal court proceedings to deny Plaintiff "due process." (Doc. 1-1 at ¶ 75; *see also id.* at ¶¶ 64–69, 70–89). He also says Defendants Miller, Robson, Hale, Sparks, Bunstine, Clark, Stilson, and Meadows "spread[] a false narrative that Plaintiff has done something 'horrible' with the children" to "scare[] off attorneys" in Vinton County and "isolate Plaintiff from legal support." (*Id.* at ¶¶ 90–94). Because of this "smear campaign" (*id.* at 18), Plaintiff says he has had to proceed *pro se* in the state court proceedings. (*Id.* at ¶ 91).

In March and April 2025, Plaintiff filed new motions in the juvenile court case, seeking a hearing on the no-contact order and sanctions against certain individuals. (*Id.* at ¶¶ 75, 81–88; Doc. 9-1 at ¶¶ 147–53). Defendant Judge Steven Williams denied the motions, in part, because Plaintiff withdrew from the case in October 2024. (Doc. 9-1 at ¶¶ 153–58).

All told, Plaintiff says his criminal charges and continued separation from the children are the result of Defendants' coordinated effort to violate his civil rights. (Doc. 1-1 at ¶¶ 144–146; Doc. 9-1 at ¶¶ 160–63). Consequently, he sues under 42 U.S.C. § 1983 for redress of his constitutional rights. (Doc. 1-1 at 29). As relief, Plaintiff seeks an order "enjoin[ing] [Defendants] from interfering with Plaintiff's companionship rights;" dismissal of his pending criminal charge, and an order to "ensure Plaintiff's due process rights are protected in all proceedings." (*Id.*). Plaintiff also requests a declaratory judgment that Defendants violated his rights "to equal protection, procedural due process, and substantive due process" and conspired "to violate his civil

rights under 42 U.S.C. § 1983." (*Id.*). Finally, Plaintiff wants punitive and compensatory damages. (*Id.* at 29–30; *see also* Doc. 9-1 at 10–11 (requesting the same relief)).

## II.    MOTION TO AMEND

Two weeks after Plaintiff filed this case, he moved to amend his Complaint. (Doc 9). Under Federal Rule of Civil Procedure 15, a party can amend a pleading "once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or" a Rule 12 motion. Fed. R. Civ. P. 15(a)(1). Since no Defendants have been served or responded to Plaintiff's Complaint, he can amend this one time "as a matter of course" without the Court's leave. Fed. R. Civ. P. 15(a)(1); *Tolliver v. Noble*, 752 F. App'x 254, 261–62 (6th Cir. 2018).

The Court notes, however, that Plaintiff wants to supplement his Complaint, not replace it wholesale. (*See* Doc. 9 at 3 (noting the amendment adds to the original complaint); Doc. 9-1 at ¶ 1 (incorporating "the entirety of [the] original complaint")). Therefore, the Clerk is **DIRECTED** to combine Plaintiff's Complaint and amendment into one filing on the docket. (Doc. 1-1; Doc. 1-2; Doc. 1-3; Doc. 9-1; Doc. 9-2). The Clerk is further **DIRECTED** to label that document Plaintiff's Amended Complaint.

## III.   SCREENING STANDARD

Because Plaintiff is proceeding *in forma pauperis*, the Court must dismiss the Amended Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Courts also "understand § 1915(e)(2) to include screening for lack of subject matter jurisdiction." *Howard v. Good Samaritan Hospital*, No. 1:21-cv-160, 2022 WL 92462, at *2 (S.D. Ohio Jan. 10, 2022). Indeed, courts are obligated to consider whether they have subject

matter jurisdiction and may raise jurisdictional issues *sua sponte*. *Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 268 (6th Cir. 2007). If a court finds that that it lacks subject matter jurisdiction, it must dismiss the case. Fed. R. Civ. P. 12(h)(3).

Otherwise, complaints by *pro se* litigants are to be construed liberally and held to less stringent standards than those prepared by attorneys. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). Nonetheless, "basic pleading essentials" are still required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and providing "the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1), (2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (saying a complaint must have enough facts to give the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests" (internal quotation omitted)).

At this stage, the Court must construe Plaintiff's Amended Complaint in his favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. But the Court does not have "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Similarly, "[w]hen a document attached to the complaint contradicts the allegations, the document trumps the allegations" to the extent it "utterly discredit[s] the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020) (internal quotation and quotation marks omitted); *see also Joyce v. Roan*, No. 2:24-cv-132, 2025 WL 814831, at *1 n.1 (W.D. Mich. Mar. 14, 2025) (collecting cases and applying this principle on an initial screen under 28 U.S.C. § 1915(e)). At bottom, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## IV.    SCREENING OF THE AMENDED COMPLAINT

As noted, Plaintiff brings claims under 42 U.S.C. § 1983 for Defendants' conduct and rulings in state juvenile and criminal court proceedings.  Because Plaintiff's allegations implicate an ongoing criminal prosecution, child custody issues, and state court judgments, the Court lacks jurisdiction or should abstain from reviewing most of his claims.  As for the rest, Plaintiff sues immune and improper Defendants or fails to state a claim upon which relief can be granted. Ultimately, Plaintiff's Amended Complaint should be dismissed in its entirety.

### A.    Criminal Proceedings and *Younger* Abstention

The Undersigned begins with Plaintiff's claims about his ongoing criminal prosecution. Plaintiff seeks a declaratory judgment that Defendant Miller's prosecutorial decisions and Judge Griffith's actions and orders violated Plaintiff's procedural and substantive due process rights. (Doc. 1-1 at ¶¶ 139, 142; *see also id.* at ¶¶ 64–89).  Further, he seeks a declaratory judgment that Defendants Miller and Griffith conspired with the other Defendants to "file the baseless falsification charge" and deny his motions in the criminal case.  (*Id.* at ¶¶ 145–46).  He also seeks an order ensuring his due process rights will be protected moving forward, as well as outright dismissal of his criminal case.  (*Id.* at 29).

The doctrine set out in *Younger v. Harris* prevents the Court from granting such relief.  401 U.S. 37, 44–45 (1971).  Federal courts "must decline to interfere," or abstain from, "pending state proceedings involving important state interests unless extraordinary circumstances are present." *Leveye v. Metro. Pub. Def. Off.*, 73 F. App'x 792, 794 (6th Cir. 2003) (citing *Younger*, 401 U.S. at 44–45).  The doctrine "permit[s] state courts to try state cases free from interference by federal courts, particularly where the party to the federal case may fully litigate his claim before the state court."  *Burton v. Fentress Cnty. Jail*, No. 2:15-cv-51, 2015 WL 5672989, at *2 (M.D. Tenn. Sept.

25, 2015) (quoting *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986)). Abstention under *Younger* is appropriate where "(1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceeding will afford the plaintiff an adequate opportunity to raise his constitutional claims." *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995) (citation omitted).

Ultimately, Plaintiff's requests for declaratory and injunctive relief involving his criminal case fall squarely within the type of interference that *Younger* proscribes. (Doc. 1-1 at 29); *Burton*, 2015 WL 5672989, at *2 (saying *Younger* abstention applies to requests for declaratory and injunctive relief) (citing *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998)). As to the first two factors under *Younger*, Plaintiff's state criminal case is ongoing, and an important state interest is at stake, since "state criminal prosecutions have traditionally been considered an arena in which federal courts decline to interfere." *Leveye*, 73 F. App'x at 794 (citing *Younger*, 401 U.S. at 43–45).

All that remains is whether the state court provides Plaintiff an opportunity to raise his constitutional claims. Importantly, the Court must "presume that the state courts are able to protect the interests of the federal plaintiff." *Kelm*, 44 F.3d at 420. The burden is on Plaintiff to show otherwise. *Meyers v. Franklin Cnty. Ct. of Common Pleas*, 23 F. App'x 201, 205 (6th Cir. 2001). Here, Plaintiff does not allege that he cannot raise his constitutional claims in state court at a trial— or in an eventual appeal if convicted. *See, e.g.*, *Fieger v. Cox*, 524 F.3d 770, 775–76 (6th Cir. 2008) (noting the federal plaintiffs could file motions in the state court, challenge procedural irregularities on appeal, or challenge certain evidence in the state court); (*cf.* Doc. 1-1 at ¶ 114 (alleging, without any description of what issues have been raised in state court, that the "state remedies have proven ineffective and biased against [Plaintiff]")).

With all three prongs met, this Court should abstain and **DISMISS** Plaintiff's claims to the extent he seeks declaratory or injunctive relief related to his criminal prosecution.

### B.     Domestic Relations Exception and *Rooker-Feldman*

For the child custody proceedings, Plaintiff requests two forms of injunctive relief.  First, he asks the Court to enjoin Defendants from "interfering with [his] companionship rights."  (Doc. 1-1 at 29).  Second, he asks for a court order protecting his due process rights in all proceedings. (*Id.*).  Both requests should be denied.

### 1.     *Injunctive Relief for Companionship Rights*

Beginning with Plaintiff's request concerning his custodial rights, two jurisdictional doctrines prohibit such relief.  To begin, child custody matters fall within the state courts', not the federal courts', jurisdiction.  *Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)); *see also Stephens v. Hayes*, 374 F. App'x 620, 623 (6th Cir. 2010) ("The whole subject of the domestic relations of . . . parent and child, belongs to the laws of the states, and not to the laws of the United States." (internal quotation omitted)).  The doctrine, called the domestic relations exception, prohibits federal courts from determining who should have custody over a child.  *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015); *Alexander v. Rosen*, 804 F.3d 1203, 1205–06 (6th Cir. 2015) (noting a federal court lacks jurisdiction over a case where a plaintiff "positively sues in federal court for . . . child custody, or seeks to modify or interpret [a] child-custody decree"); *see also Robards v. Slatery*, No. 2:24-cv-52, 2024 WL 4370780, at *3–4 (M.D. Tenn. Oct. 1, 2024) (explaining when federal courts may adjudicate claims tangentially related to child custody matters).

Similarly, *Rooker-Feldman* instructs that parties may not "go into federal court essentially seeking a review of a state-court decision."  *Kovacic v. Cuyahoga Cnty. Dep't of Child. and Family*

*Servs.*, 606 F.3d 301, 308 (6th Cir. 2010).  Instead, appellate review of state court judgments "is vested in the Supreme Court" only, not federal district courts.  *Id.*  To determine whether *Rooker-Feldman* bars a claim, courts analyze "the source of the injury the plaintiff alleges in the federal complaint."  *VanderKodde v. Mary Jane Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020).  If the injury's source "is the state-court judgment itself, then *Rooker-Feldman* applies . . . . If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim."  *Id.* (internal quotations and quotation marks omitted).

Here, Plaintiff's request to enjoin Defendants from "interfering with [his] companionship rights" violates both doctrines.  (Doc. 1-1 at 29).  To issue such an order, the Court would have to interpret and modify the state court's custody orders, which the domestic relations exception expressly prohibits.  (*See, e.g.*, Doc. 1-1 at ¶ 49 (saying that the Vinton County Juvenile Court granted Defendant SCOJFS custody of the children); Doc. 9-1 at ¶ 153; Doc. 9-2 at 12–14 (noting that the Vinton County Juvenile Court interprets both the no-contact order and previous custody orders as terminating Plaintiff's companionship rights)); *Chevalier*, 803 F.3d at 797; *Alexander*, 804 F.3d at 1205–06.

What's more, the Court would have to overturn the state court's custody rulings, since the Vinton County Juvenile Court awarded custody to Defendant SCOJFS.  By seeking this type of order, Plaintiff is essentially appealing the state court's custody decision in a federal court. *Rooker-Feldman* bars exactly that.  *See Kovacic*, 606 F.3d at 310 (saying a case should be dismissed if the plaintiff seeks "review or reversal of the decision of the juvenile court to award temporary custody to the state"); *Evans v. Klaeger*, 12 F. App'x 326, 327 (6th Cir. 2001) (finding a request for declaratory relief was barred by *Rooker-Feldman* where the plaintiff wanted the federal court to declare that the state court custody decision violated his Fourteenth Amendment

rights to equal protection and substantive due process).  Consequently, this request for injunctive relief should be **DENIED**.

2.    *Injunctive Relief to Protect Due Process Rights*

Next, the Undersigned addresses Plaintiff's request for an order "ensur[ing] Plaintiff's due process rights are protected" in future juvenile court proceedings.  (Doc. 1-1 at 29).  The Undersigned notes that this request is impermissibly vague.  Plaintiff does not specify what protection he seeks, nor does he provide a jurisdictional basis for the Court to issue such broad, open-ended relief.  *Cf.* Fed. R. Civ. P. 8(a)(1) (saying a complaint must contain a statement "of the grounds for the court's jurisdiction").

And there is another reason the request should be denied.  The custody proceedings, as they relate to Plaintiff, appear to be over.  While Plaintiff suggests that the juvenile court case is ongoing, he also says he withdrew from the case in October 2024.  (Doc. 1-1 at ¶ 69).  That allegation is supported by court orders attached to the Amended Complaint.  The state court notes that Plaintiff is no longer a party in the juvenile court proceedings and denies several of his recent motions for that reason.  (Doc. 9-2 at 12–14).  The state court also says that Plaintiff's recent motions "appear to be designed to appeal [the state court's] decision." (*Id.* at 14).  Plaintiff does not allege he has filed any appeal.  (Doc. 1-1 at ¶¶ 109–14).  Therefore, the Court cannot grant Plaintiff an order ensuring his due process rights are protected in the juvenile court proceedings because for Plaintiff, those proceedings seemingly have ended.  This request for injunctive relief also should be **DISMISSED**.

**C.    Declaratory Judgment Act**

Plaintiff also requests declaratory judgments for Defendants' actions in the juvenile court proceedings.  (Doc. 1-1 at 29).  Once more, the Court should not grant his requests.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). Such relief is discretionary, not mandatory. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) ("In passing the act, Congress 'created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.'" (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995))). A declaratory judgment largely serves two purposes. Either it clarifies the legal relations at issue between the parties or it "terminate[s] and afford[s] relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Savoie v. Martin*, 673 F.3d 488, 495–96 (6th Cir. 2012).

Plaintiff's requests are fatally ambiguous. Without referencing specific actions, he asks the Court to declare that Defendants violated his "rights to equal protection, procedural due process, and substantive due process" and conspired against him in violation of Section 1983. (Doc. 1-1 at 29; Doc. 9-1 at 10). The Court cannot ascertain how issuing such vague relief would accomplish the goal of a declaratory judgment. *Savoie*, 673 F.3d at 495–96; *Rudd v. Pittman*, No. 1:20-cv-27, 2020 WL 13749259, at *6 (W.D. Mich. July 28, 2020) (finding a plaintiff's request for declaratory relief related to a custody decision was "too general and speculative"), *report and recommendation adopted as modified*, No. 1:20-cv-27, 2021 WL 230112 (W.D. Mich. Jan. 22, 2021). Further, Plaintiff's Amended Complaint includes hundreds of pages of allegations and exhibits that describe events over several years. (Doc. 1-1; Doc. 1-2; Doc. 1-3; Doc. 9-1; Doc. 9-2). Given this, it is hard to say which allegations even form the bases of his requests. (Doc. 1-1 at 29 (referencing no specific events); Doc. 9-1 at 10 (same)).

Even if Plaintiff's requests were more precise, the Court still should decline to exercise jurisdiction.  In deciding whether to maintain jurisdiction over a declaratory judgment action, courts consider the following (the "*Grand Trunk*" factors):

> (1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (citing *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

The first two factors weigh against exercising jurisdiction.  As noted, the state court granted custody to Defendant SCOJFS, Plaintiff withdrew from the child custody case, and he has not appealed the state court's custody decision.  (Doc. 1-1 at ¶¶ 69, 109–14; Doc. 9-2 at 12–14). Therefore, declaring that Defendants violated his rights in the past juvenile court proceedings would not settle any current controversy or clarify the legal relations between the parties.  *Savoie*, 673 F.3d at 496 (finding the first factor weighed against exercising jurisdiction where a plaintiff sought declaratory relief for concluded custody proceedings where the court granted custody to another party).

The third factor, however, is neutral because there is no evidence in the record suggesting Plaintiff filed this action for a procedural advantage or *res judicata* purposes. *Locke v. Brown*, No. 3:18-cv-697, 2019 WL 4675390, at *7 (W.D. Ky. Sept. 25, 2019) (saying the Sixth Circuit finds this factor neutral "if there is no evidence of procedural fencing").

But the fourth factor weighs heavily against jurisdiction. This factor, which considers whether "accepting jurisdiction would increase friction between federal and state courts," includes three sub-parts. *Flowers*, 513 F.3d at 559.

> (1) [W]hether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Cole's Place, Inc.*, 936 F.3d at 396 (citing *Scottsdale Ins. Co.*, 513 F.3d at 560).

Applied here, the first two sub-parts are largely neutral. Because Plaintiff withdrew from the child custody case and has not appealed, there are no factual findings needed from the state court to resolve Plaintiff's requests for declaratory relief. *Cf. Locke*, 2019 WL 4675390, at *8 (finding a state appellate court's decisions would be useful, since the plaintiff appealed evidentiary rulings in a child custody case). And "[s]tate courts are as competent as federal courts to address claims arising under the federal constitution, including the merits of constitutional claims arising in the context of a child custody dispute." *Id.* (collecting cases); *see also Lowden v. Cnty. of Clare*, 709 F.Supp.2d 569, 580 (E.D. Mich. 2010) (finding that a state court was not "necessarily in a better position" to decide constitutional questions (internal quotation marks omitted)).

But the third sub-part—"whether the issue in this federal action implicates important state policies and is, thus, more appropriately considered in state court"—tips the scales here. *Flowers*, 513 F.3d at 561. Undoubtedly, the state court has a "strong interest in addressing" child custody matters "without interference" from the federal courts. *Harmon v. Goodwin*, No. 3:24-cv-47, 2025 WL 449809, at *5 (W.D. Ky. Feb. 10, 2025) (quoting *Huynh Thi Anh v. Levi*, 586 F.2d 625, 632 (6th Cir. 1978)); *see also Shabazz v. Xerox*, No. 1:14-cv-578, 2014 WL 4181600, at *6–7 (S.D. Ohio Aug. 21, 2014) (noting Ohio juvenile courts have exclusive jurisdiction over child custody

determinations and discussing limits on federal claims related to custody issues).  State courts are also far more adept at handling these types of domestic relations issues.  *Queen v. Farhat*, No. 25-10444, 2025 WL 1173007, at *5 (E.D. Mich. Apr. 22, 2025) ("[I]ssues of domestic relations are primarily reserved for state courts to adjudicate."); *Chevalier*, 803 F.3d at 704 (noting that state courts have "judicial expertise" over child custody matters).  Given that Plaintiff's claims are so intertwined with the child custody rulings, the state court is a more appropriate forum than this Court.

Other comity concerns are at play, too.  Plaintiff seemingly asks the Court to, among other things, declare that Judge Grillo's and Judge Williams's rulings are unlawful, as well as review how they handled pending litigation.  (Doc. 1-1 at ¶¶ 39, 49, 55–63, 103, 113, 136–37, 139–40, 142, 145–46; Doc. 9-1 at ¶ 17).  Still more, he wants the Court to impose its view on how county employees care for children in their custody.  (Doc. 1-1 at ¶¶ 49–54; 99–104).  Doing so would undoubtedly "increase friction between" this Court and the state courts.  *Flowers*, 513 F.3d at 559; *see Rudd*, 2020 WL 13749259, at *6 (finding as much where the plaintiff sought declaratory relief against a judge in an underlying child custody proceeding); *Queen*, 2025 WL 1173007, at *5 (same); *Locke*, 2019 WL 4675390, at *8 (same); *Harmon*, 2025 WL 449809, at *1, 3–4 (declining to exercise jurisdiction in a declaratory judgment action concerning various defendants' roles in a child custody case).  Some of these declarations also would violate *Rooker-Feldman*'s principles, as this Court would have to evaluate whether the state court's custodial and legal rulings were wrong or unconstitutional.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 n.1 (2005) (noting federal courts cannot "entertain constitutional claims attacking a state-court judgment . . . when the constitutional attack [is] inextricably intertwined with the state court's judgment" (internal quotation omitted)).

Finally, an alternative remedy is available.  The thrust of Plaintiff's case is his belief that the state court's custody ruling was wrong.  While he alleges equal protection and due process violations, he requests that his custodial rights be restored.  (Doc. 1-1 at 29; Doc. 9-1 at 10; *see also* Doc. 3 (seeking a temporary restraining order to restore Plaintiff's companionship rights and terminate the no-contact order)).  Ultimately, he can challenge the custody determination only in the state courts, who have exclusive jurisdiction over child custody determinations and related appeals.  *Lesher v. Lavrich*, 632 F.Supp. 77, 84 (N.D. Ohio 1984) ("Substantive child custody issues are appropriately determined in the State court system, including the State appeal process.").  And the state courts are as well-equipped as this Court to handle his accompanying constitutional claims.  *Locke*, 2019 WL 4675390, at *8.

While courts must balance the *Grand Trunk* factors, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case."  *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).  Here, most of the factors weigh against jurisdiction.  When faced with similar declaratory judgment actions about child custody proceedings, courts often decline to exercise their jurisdiction, even where Section 1983 claims are raised.  *See, e.g.*, *Savoie*, 673 F.3d at 496; *Locke*, 2019 WL 4675390, at *8; *Rudd*, 2020 WL 13749259, at *6; *Harmon*, 2025 WL 449809, at *5.  Given the significant comity and federalism concerns presented by Plaintiff's requests, this Court should, too.

In sum, the Undersigned **RECOMMENDS DISMISSING** Plaintiff's claims for declaratory relief related to the juvenile court proceedings.

### D.      Individual Defendants

Finally, Plaintiff seeks both compensatory and punitive damages.  (Doc. 1-1 at 29–30).  Ultimately, Defendants are immune from such relief, or Plaintiff fails to state a claim upon which relief could be granted.  The Undersigned addresses each group of Defendants in turn.

#### 1.      Improper Defendants

As discussed, Plaintiff raises Section 1983 claims only.  (Doc. 1-1 at ¶¶ 135–46; Doc. 9-1 at ¶¶ 160–63).  Defendants SCOJFS, Meadows, Clark, and Stilson cannot be sued under this statute.  A Section 1983 claim requires that a person acting under color of state law violated the plaintiff's constitutional rights.  *See Graham v. Nat. Coll. Athletic Ass'n*, 804 F.2d 953, 957 (6th Cir. 1986); 42 U.S.C. § 1983.  Defendant SCOJFS, as a department or agency of Vinton County, is not *sui juris* and cannot be sued "in its own right" under the statute.  *Loper v. Cuyahoga Cnty. Child. and Family Servs.*, No. 1:18-cv-1598, 2019 WL 1597552, at *2 (N.D. Ohio Apr. 15, 2019) (saying the Cuyahoga County Children and Family Services is not *sui juris* and collecting cases).

For their part, Defendant Stilson is the mother of the children, Defendant Meadows is her retained counsel, and Defendant Clark was appointed by the state court to represent the children in the child custody proceedings.  (Doc. 1-1 at ¶¶ 9, 12, 16).  None of them are state actors for the purposes of Section 1983.  *See Newton v. Lairson*, No. 3:24-cv-P87, 2024 WL 1776395, at *2 (W.D. Ky. Apr. 24, 2024) (dismissing Section 1983 claims brought against an ex-wife over allegedly "false testimony during custody hearings" and other conduct); *Mulligan v. Schlachter*, 389 F.2d 231, 233 (6th Cir. 1968) (saying a private attorney appointed by the court cannot be sued under Section 1983); *Milgrom v. Burstein*, 374 F.Supp.2d 523, 527 (E.D. Ky. 2005) ("An ex-wife, even when an ex-wife acts with her divorce attorney(s), is not a state actor."); *Maben v. Terhune*, No. 16-1025, 2016 WL 9447153, at *3 (6th Cir. Aug. 19, 2016) (finding a lawyer who filed a

motion to modify a child custody order and failed to properly serve the father of the children was not a state actor). Accordingly, Plaintiff fails to state a claim for relief against these Defendants.

### 2. Judicial Officers

Next, Plaintiff sues Vinton County Judges Grillo, Griffith, and Williams for Fourteenth Amendment violations. (Doc. 1-1 at ¶¶ 6, 7, 135–46; Doc. 9-1 at ¶¶ 17, 160–63). Despite Plaintiff's arguments to the contrary, they are entitled to immunity.

Judicial officers enjoy absolute immunity from suit. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (noting that judicial immunity extends to "those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune"). This broad protection exists to ensure that judicial officers are "free to act upon [their] own convictions, without apprehension of personal consequences to [themselves]." *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).

Judicial immunity can be overcome only where a judge performs "nonjudicial actions" or acts "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12. This means that judges are immune from suit even when they act "maliciously, corruptly, in bad faith, or in error." *Huffer v. Bogen*, 503 F. App'x 455, 459 (6th Cir. 2012). To determine if an action is judicial in nature, courts consider whether it "is a function normally performed by a judge," as well as "the expectations of the parties," like "whether [the parties] dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12 (internal quotation and quotation marks omitted) (cleaned up).

Here, all the acts of which Plaintiff complains were judicial in nature. For instance, he challenges Defendants' rulings in the child custody and criminal proceedings (Doc. 1-1 at ¶¶ 79–89, 136, 137, 139, 140, 142, 145, 146; Doc. 9-1 at ¶ 17); their decisions or lack thereof on his

motions (Doc. 1-1 at ¶¶ 81, 139; Doc. 9-1 at ¶ 17); and their failure to hold hearings in a certain manner or respond to his emails (Doc. 1-1 at ¶¶ 60–62, 69, 79–82, 87–88). At bottom, even though Plaintiff tries to circumvent immunity by claiming these acts were administrative, they occurred while Defendants were acting in their judicial capacities. *See, e.g.*, *Hughes v. Duncan*, 636 F.Supp.3d 879, 889 (M.D. Tenn. 2022) ("Judicial immunity forecloses plaintiff's claim based on a judge's alleged failure to hold a hearing." (internal quotation and quotation marks omitted)); *Murphy v. Nw. Sch. Dist.*, No. 5:12-cv-2429, 2013 WL 1500816, at *6 (N.D. Ohio Apr. 11, 2013) ("The issuance of judicial orders pertaining to custody, child support, and the issuance of temporary restraining orders are all actions normally performed by common pleas court judges."); *Maben*, 2016 WL 9447153, at *3 (saying a judge was entitled to immunity for allegations that he held a hearing and ruled on a child custody motion even though the plaintiff was absent). And Plaintiff does not allege Defendants acted without jurisdiction in the child custody or criminal proceedings. (*See generally* Doc. 1-1 at ¶¶ 6, 7, 135–46; Doc. 9-1 at ¶¶ 17, 160–63).

As a result, Plaintiff cannot overcome judicial immunity. His claims for damages against Defendants Grillo, Griffith, and Williams should be **DISMISSED**.

### 3. *Prosecutor Miller*

Plaintiff sues Defendant Miller, a Vinton County prosecutor, for her conduct in his criminal case and the juvenile custody proceedings. (Doc. 1-1 at ¶¶ 139, 145–46).

Like judges, prosecutors enjoy absolute immunity from suits for damages for acts that are "intimately associated with the judicial process." *Cunningham v. Dep't of Child. Servs.*, 842 F. App'x 959, 966 (6th Cir. 2021) (quotation omitted). Specifically, prosecutors are immune for actions "falling within [their role] as advocate for the state." *Id.* (quoting *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir. 1997)). This immunity is not overcome if a "prosecutor makes mistakes

or acts with excessive zeal." *French v. Hester*, 585 F.Supp.3d 974, 984 (E.D. Ky. 2022) (internal quotation and quotation marks omitted). Rather, "[p]rosecutorial immunity casts a wide net of protection." *Id.*

Plaintiff claims Defendant Miller is not entitled to immunity because her actions were "administrative or investigative, not prosecutorial." (Doc. 1-1 at ¶ 139; *see also id.* at ¶ 145). The Undersigned disagrees.

Up front, the Undersigned notes that Defendant Miller does not serve as a criminal prosecutor only. Defendant Miller is also a juvenile court prosecutor and represents Defendant SCOJFS in the custody proceedings at issue. (*See, e.g.*, Doc. 1-3 at 38–39, 41–44). Plaintiff sues Defendant Miller for criminally charging him, for moving for pre-trial release conditions, for filing motions and objections in the child custody case, and for failing to turn over discovery. (Doc. 1-1 at ¶¶ 55, 64, 66, 68, 71, 75, 77, 84–87; *see also id.* ¶ 74 (saying certain motions provide evidence of "improper coordination and further ghosting")). These acts all fall within Defendant Miller's role as an advocate for the state in both proceedings, and she is entitled to immunity—even if her underlying motives were as nefarious as Plaintiff believes. *Fambrough v. City of East Cleveland*, No. 1:22-cv-992, 2023 WL 4052457, at *7 (N.D. Ohio June 16, 2023) ("The motives of a prosecutor . . . are irrelevant for the purposes of immunity."); *see also Ireland*, 13 F.3d at 1446 (saying a prosecutor's decision to file a criminal complaint is covered by prosecutorial immunity); *Cunningham*, 842 F. App'x at 966 (finding a prosecutor enjoyed immunity for actions taken while seeking an *ex parte* order for a child custody investigation); *Price v. Montgomery Cnty.*, 72 F.4th 711, 720 (6th Cir. 2023) (saying prosecutors are immune even when they fail to disclose evidence).

19

Plaintiff's remaining allegations against Defendant Miller concern emails she sent and her failure to serve Plaintiff with a court filing on time.  (*Id.* at ¶¶ 65, 67, 75, 76; Doc. 9-1 at ¶ 151). Starting with the emails, Plaintiff suggests they show a conspiracy between the Defendants.  (Doc. 1-1 at ¶¶ 144–46 (saying Defendant Miller "coordinated with juvenile case parties")).  In them, Defendant Miller explains the state's legal position to Plaintiff because at times, he represented himself in the state court proceedings.  (*Id.* at 47 ("You are acting as your own legal representation and, therefore, I will continue to converse with you as I would any licensed attorney whom you engaged to represent you . . . I am well within my ethical boundaries of representation to highlight the shortcomings of your arguments[.]"); *see also id.* 35 (stating the court removed the children from Plaintiff's custody and that contact will not be permitted based on "Judge Grillo's decision"), 36 (saying the state does not consider Plaintiff a party in the child custody case, even though the juvenile court had not yet ruled on his motion to dismiss), 46 (saying, before Plaintiff withdrew his plea in the criminal case, that he would not be allowed to have contact with the children), 47 (explaining the state's legal position in the ongoing criminal case)).

Plaintiff fails to state a claim based upon these emails.  Importantly, "[a] claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable injury." *Rapp v. Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014).  Further, a plaintiff must allege sufficient facts showing that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive [Plaintiff of his] constitutional rights, and (3) an overt act was committed." *Arsan v. Keller*, 784 F. Appx 900, 914 (6th Cir. 2019) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)).  Specificity is essential.  *Id.*  "[V]ague and conclusory allegations unsupported by material facts" will not do the trick.  *Id.* (quoting *Spadafore v. Gardner*, 330 F.3d

20

849, 854 (6th Cir. 2003)); *see also Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (saying these pleading requirements "are relatively strict").

Plaintiff appears to allege that the injury underlying his conspiracy claim is the state court's decision to terminate his companionship rights and issue a no-contact order. (Doc. 1-1 at ¶¶ 145–46). While Plaintiff is correct that parents have "a qualified substantive due process right to raise" their children, *Arsan*, 784 F. App'x at 910, Defendant Miller cannot be held liable for the court's rulings. *Cf. id.*; *Pittman v. Cuyahoga Cnty. Dep't of Child. and Family Servs.*, 640 F.3d 716, 729 (6th Cir. 2011) ("[T]o the extent that [the plaintiff] suffered a deprivation of his fundamental right to family integrity, that deprivation was perpetrated by the juvenile court, not by [the defendant case worker].").  Therefore, Plaintiff raises no underlying, actionable injury for which Defendant Miller can be held liable. *Rapp*, 557 F. App'x at 450.

Even if Plaintiff sufficiently alleged an injury, Plaintiff's conspiracy claim against Defendant Miller is premised on mere conclusions, at best. *See Iqbal*, 556 U.S. at 679 (saying legal conclusions are not entitled to the "assumption of truth," even at the pleadings stage).  He alleges that Defendant Miller conspired to take away his custody rights, but the emails he provides show no plan or conspiratorial objective between Miller and the other Defendants.  Indeed, all that can be gleaned from the emails is Defendant Miller's view on the state court proceedings and her interpretation of the court's custody and no-contact orders. (Doc. 1-3 at 36, 46, 47). Without more facts showing a single plan or conspiratorial objective, Plaintiff fails to allege a conspiracy claim under Section 1983.

Finally, the Court turns to Plaintiff's procedural due process claim seemingly based upon Defendant Miller's failure to timely serve a court filing. (Doc. 1-1 at ¶ 75). This, too, is not a claim.  To allege such a claim, Plaintiff must plead and prove that state processes and remedies

21

are inadequate to redress his due process violations. *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 587–88 (6th Cir. 2004). Plaintiff says the opposite here. When Defendant Miller failed to timely serve a court filing upon him, Plaintiff contacted the state court, and Plaintiff was served with the filing. (Doc. 1-1 at ¶ 75). Because processes at the state-court level were able to redress this alleged injury, this claim is meritless.

All told, Defendant Miller enjoys absolute immunity for most of Plaintiff's claims against her, and Plaintiff's remaining allegations do not state a Section 1983 claim. His claims for damages against Defendant Miller should be **DISMISSED**.

### 4. *Defendants Bunstine, Sparks, Robson, and Hale*

Plaintiff's remaining allegations involve Defendant Bunstine, the children's guardian *ad litem* in the custody proceedings, and Defendants Sparks, Robson, and Hale, all of whom work for Defendant SCOJFS as children's services employees. (Doc. 1-1 at ¶¶ 11, 13–15). Specifically, Plaintiff sues Defendant Bunstine for recommending that the children be returned to Defendant Stilson's custody in July 2024. (*Id.* at ¶ 51). He sues Defendants Sparks, Robson, and Hale for "cutting off [his] contact with the children." (*Id.* at ¶¶ 51, 52, 54). And he claims Defendants Bunstine, Sparks, Robson, and Hale engaged in a "smear campaign" against him to ensure Plaintiff cannot obtain counsel. (*Id.* at ¶¶ 90–91).

Once more, immunity blocks most of these claims. Both guardian *ad litems* and county children's services employees are entitled to absolute immunity "akin to the scope of absolute prosecutorial immunity." *Pittman*, 640 F.3d at 724. This means that they are immune from damages suits for actions taken "within the scope of their roles as advocates for the child in judicial proceedings." *Arsan*, 784 F. App'x at 908 (discussing immunity for guardian *ad litems*); *see also Pittman*, 640 F.3d at 724–25 (saying the same for children's services social workers). This scope

of immunity includes giving "testimony or recommendations given in court concerning the children's best interests," *Holloway v. Brush*, 220 F.3d 767, 776 (6th Cir. 2000), and actions taken while "reporting to the court their custody recommendations," *Arsan*, 784 F. App'x at 908.

Starting with Defendant Bunstine, Plaintiff sues him for recommending that the children be returned to Defendant Stilson's custody in July 2024. (Doc. 1-1 at ¶ 51). Because this recommendation falls within his scope as the children's advocate in the juvenile court proceedings, he is entitled to immunity. *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984) (granting immunity to a guardian *ad litem* for his role within the child custody proceedings). Plaintiff's view that this recommendation was the result of Defendant Bunstine's "antiquated views on parental roles, gender bias, and ego" does not change anything. (Doc. 1-1 at ¶ 51). At bottom, "[r]eporting custody recommendations to the court—based on biases or not—is within the scope of a guardian *ad litem*'s functions." *Arsan*, 784 F. App'x at 908.

Defendants Sparks, Robson, and Hale's alleged refusal to let Plaintiff contact the children after August 8, 2024, also falls under the umbrella of immunity. According to the Amended Complaint, the Vinton County Juvenile Court placed the children in Defendant SCOJFS's temporary custody on that day. (Doc. 9-2 at 12). On September 26, 2024, the juvenile court issued a no-contact order between Plaintiff and the children. (*Id.* at 13). Given these facts, Defendants Sparks, Robson, and Hale's custodial and visitation decisions "in compliance with the juvenile court's order awarding temporary custody" to SCOJFS are "intimately related to the judicial phase of the child custody proceeding." *Abdulsalaam v. Franklin Cnty. Bd. of Comm'rs*, 637 F.Supp.2d 561, 581 (S.D. Ohio 2009). So is their enforcement of the no-contact order. As such, Defendants Sparks, Robson, and Hale enjoy immunity as well. *Bush*, 38 F.2d at 847 (finding an officer who carried out a court order was immune from Section 1983 claims); *Abdulsalaam*, 637 F.Supp.2d at

581–82 (finding defendants were immune from a claim that they "refus[ed] to reunite a family" after the juvenile court granted a county agency temporary custody).

Even if these Defendants were not shielded by immunity, Plaintiff fails to state a claim for relief against them. Most of Plaintiff's allegations against Defendants Bunstine, Sparks, Robson, and Hale are rooted in the Vinton County Juvenile Court's orders granting custody of the children to SCOJFS and prohibiting contact between Plaintiff and the children. (Doc. 1-1 at ¶¶ 136, 139, 142, 146 (saying these Defendants terminated his custodial rights and discriminated against him in doing so)). As discussed, these Defendants cannot be held liable for rights violations caused by the state court's orders. *Pittman*, 640 F.2d at 729–30 (finding that a social worker could not be held liable for a juvenile court's decision to terminate custody rights or for the court's failure to provide notice of the custody proceedings to the plaintiff); *Arsan*, 784 F. App'x at 910 (saying county caseworkers cannot be held liable for a state court's custody determination).

Plaintiff's allegations that Defendants Bunstine, Sparks, Robson, and Hale engaged in a "smear campaign" are also insufficient. (Doc. 1-1 at ¶ 90). At base, this accusation is too conclusory. Plaintiff does not specify what actions these Defendants took, nor does he say which constitutional right was violated. (*Id.*; *see also id.* at ¶¶ 135–46 (only raising Section 1983 claims)). To state a Section 1983 claim, Plaintiff must allege both. *Iqbal*, 556 U.S. at 676 (saying a plaintiff must allege what each defendant did to violate his constitutional rights). Because he does not, this claim cannot proceed.

In sum, Defendants Bunstine, Sparks, Robson, and Hale enjoy immunity from Plaintiff's damages claims; and, alternatively, Plaintiff fails to allege a Section 1983 claim against them. These claims, too, should be **DISMISSED**.

24

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File Amended Complaint (Doc. 9) is **GRANTED**.  The Clerk is **DIRECTED** to combine Plaintiff's Complaint and amendment into one filing on the docket and label it as Plaintiff's Amended Complaint.  (Doc. 1-1; Doc. 1-2; Doc. 1-3; Doc. 9-1; Doc. 9-2).

After screening Plaintiff's Amended Complaint under 28 U.S.C. § 1915(e), the Undersigned **RECOMMENDS** that the case be dismissed in its entirety.  Specifically, the Undersigned **RECOMMENDS** the following:

1. Plaintiff's claims for declaratory and injunctive relief, as it relates to his ongoing criminal prosecution, should be **DISMISSED** under *Younger v. Harris*, 401 U.S. 37 (1971).

2. Plaintiff's claims for injunctive relief for his companionship rights should be **DISMISSED** under the domestic relations exception and *Rooker-Feldman*.  Because Plaintiff withdrew from the child custody proceedings, and because his request is too vague, Plaintiff's request for an order ensuring his due process rights are protected in those proceedings should also be **DENIED**.

3. Plaintiff's claims for declaratory relief related to the child custody proceedings should be **DISMISSED** because they, too, are vague.  Alternatively, the Court should **DECLINE** to exercise jurisdiction over them.

4. Plaintiff's remaining claims for damages should be **DISMISSED** for immunity reasons and for failure to state a claim upon which relief can be granted.

5. Finally, because the Undersigned finds that the Amended Complaint should be dismissed, Plaintiff's other pending motions should be **DENIED**.  (Docs. 3, 4, 5, 6, 8, 10).

Date: May 21, 2025                              /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE

### Procedure on Objections

Under Federal Rule of Civil Procedure 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended by the Court on a timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).