# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

COREY MASON,

       Plaintiff,

  v.

THE HONORABLE ROBERT
GRILLO, et al.,

       Defendants.

Case No. 2:25-cv-335

JUDGE DOUGLAS R. COLE
Magistrate Judge Jolson

## OPINION & ORDER

Plaintiff Corey Mason, proceeding pro se and in forma pauperis (IFP), asks the Court to involve itself in state criminal and child custody proceedings. After screening Mason's original Complaint and supplemental complaint under 28 U.S.C. § 1915(e),[1] Magistrate Judge Jolson issued a Report and Recommendation (R&R, Doc. 13) advising the Court to dismiss Mason's case based on abstention, lack of jurisdiction, and various immunity doctrines. For the reasons discussed below, the Court **ADOPTS IN PART** the R&R (Doc. 13), and **DISMISSES** Mason's Amended Complaint (Doc. 14) **WITH PREJUDICE**. Because of that dismissal, the Court further **DENIES** Mason's other pending motions (Docs. 3, 4, 5, 6, 8, 10).

---

[1] After filing his original Complaint (Doc. 12), Mason moved to file an "amended complaint," (and attached the proposed amended complaint), (Docs. 9, 9–1), which the Magistrate Judge construed as a supplemental complaint, (Doc. 13, #373). The Magistrate Judge, after granting Mason leave to file the supplement, ordered the Clerk to combine Mason's Complaint and supplement into one filing on the docket. (*Id.*). That combined filing is now reflected on the docket as Mason's Amended Complaint (Doc. 14).

# BACKGROUND

A.  **Factual Background**

This case arises out of two state-court proceedings: a child custody dispute (which is still ongoing) and a related criminal prosecution (which has since resolved). Mason's allegations are lengthy and at times hard to follow. But in short, he claims that the twelve named Defendants violated his civil rights in connection with both of those proceedings.

Start from the beginning. From 2014 to 2016, Mason was in a relationship with Defendant Samantha Stilson. (Doc. 14, #399). Stilson has three children—T.F., P.F., and S.S.—none of whom are Mason's biological children. (*Id.*). That said, during his relationship with Stilson, Mason says he formed a bond with them. (*Id.*). So in 2017, when Stilson lost custody of the children, Mason obtained a kinship placement and allegedly raised them in loco parentis from 2017 to 2024. (*Id.*).

But in 2021, a custody battle ensued. Judge Robert Grillo of the Vinton County Juvenile Court granted Mason and Stilson "50/50" custody of the children. (*Id.* at #402). Unhappy with that arrangement, Mason filed for full custody. (*Id.*). But the "process dragged out" for a couple of years. (*Id.*). And at a 2023 hearing, Judge Grillo allegedly told Mason that he "ha[s] never removed a mother's rights and [] d[id] not plan to anytime soon." (*Id.*). Mason says that comment exhibits "clear gender bias" against him. (*Id.*). In any event, in July 2024, the juvenile court granted Mason companionship rights, which included specific visitation times. (*Id.* at #403).

According to Mason, though, Stilson did not abide by that order—she refused him his court-ordered time with the children during a week in early August 2024. (*Id.*

2

at #404). And during that week, an incident arose that led to a police investigation and Stilson's arrest. (*Id.*). In light of that, the juvenile court granted South-Central Ohio Job and Family Services (SCOJFS) temporary custody of the children and determined that Mason "was no longer an appropriate custodian." (*Id.*; Doc. 14-3, #446). Mason believes the juvenile court reached that conclusion because Lindsay Sparks, a SCOJFS employee, allegedly created a "false narrative" that Mason had "orchestrated the incident" leading to Stilson's arrest. (Doc. 14, #404). Then, to make matters worse, in September 2024, the court granted SCOJFS's motion for a no-contact order between Mason, Stilson, and the children. (Doc. 14-8, #594–95). Mason says that Missi Robson, Terry Hale—also SCOJFS employees—and Sparks acted in bad faith by unilaterally terminating his contact without notice or a hearing. (Doc. 14, #404–05). And he blames that, in part, on Chase Bunstine, the children's court-appointed guardian ad litem, who apparently recommended that the court return the children to Stilson. (*Id.* at #405).

Ultimately, though, after the initiation of criminal proceedings against Mason (more on that below), Mason voluntarily withdrew from the juvenile court case in October 2024. (*Id.* at #409). That is, until he had a change of heart. Despite having withdrawn he proceeded to file new motions on the juvenile court's docket in December 2024, March 2025, and April 2025. (Doc. 14-1, #427–29; Doc. 14-8, #595). Judge Steven Williams, who is a Judge by Assignment in the Vinton County Juvenile Court, denied those motions, partly because Mason had withdrawn from the case and partly based on the merits. (Doc. 14-1, #429–30). Mason, however, believes those

3

denials violated myriad constitutional rights. (*Id.* at #433–35). So that's where the juvenile proceedings stand.

Now turn to the criminal proceedings, which are, in some ways, related to the custody battle. On September 26, 2024, Vinton County Assistant Prosecutor Amanda Miller filed a falsification charge against Mason, alleging that he submitted a falsified mental health evaluation document in the juvenile case. (Doc. 14, #408). He was then arrested. (*Id.* at #409). After that, Judge Jeffrey Griffith—another Vinton County Judge—allegedly imposed excessive bail conditions. (*Id.* at #411). Mason now alleges that Judge Griffith is "engaged in procedural manipulation" of his case. (*Id.* at #411–13). He likewise believes Miller has orchestrated "improper coordination" between his criminal case and the juvenile proceedings. (*Id.* at #408–11). As further confirmation of that "coordination," he points to various emails Miller sent him in connection with his criminal proceedings. (*Id.* at #408–11; Doc. 14-1, #429).

And then there's the alleged "smear campaign." (Doc. 14, #413). Mason claims that Miller, Robson, Hale, Sparks, Bunstine, Stilson, John Clark, Jr., (the children's court-appointed attorney), and Jorden Meadows (Stilson's former attorney) have together spread a false narrative that Mason "has done something 'horrible' with the children." (*Id.*). And that has apparently "scared off" attorneys, leaving Mason without representation and "isolated" from legal support. (*Id.*).

Because of all that, Mason concludes that Defendants' conduct has violated his civil rights. So he asserts four § 1983 claims against them in their official and individual capacities: violation of equal protection (Count I), violation of procedural

4

due process (Count II), violation of substantive due process (Count III), and conspiracy to violate civil rights (Count IV). (*Id.* at #397–98, 420–24; Doc. 14-1, #427, 433–35). And he asks for several forms of relief: (1) a temporary restraining order that stays the state criminal proceedings, restores his companionship rights, and enjoins enforcement of the no-contact order; (2) a permanent injunction that enjoins Defendants from interfering with his companionship rights, dismisses the falsification charge, and ensures his due process rights are protected; (3) a declaratory judgment that Defendant violated Mason's civil rights; and (4) compensatory and punitive damages. (Doc. 14, #435–36).

B.   **Procedural Background**

Mason filed his lawsuit on April 1, 2025. Along with his Complaint, Mason filed several motions: a motion for leave to proceed IFP, (Doc. 1); a motion to expedite review of the IFP motion, (Doc. 2); a motion for a temporary restraining order (TRO), (Doc. 3); a motion for a hearing on the TRO, (Doc. 4); a motion to appoint counsel, (Doc. 5); and a motion asking the Court to order service of process by the United States Marshal, (Doc. 6). The next day, the Magistrate Judge granted Mason's request for expedited consideration of his IFP motion as well as Mason's motion to proceed IFP. (Order, Doc. 7).

Two weeks later, Mason filed three additional motions: one to obtain electronic filing rights, (Doc. 8); one for leave to file an "amended complaint," attaching the proposed amended complaint, (Docs. 9, 9-1); and one for expedited consideration of the TRO motion, (Doc. 10).

Two weeks after that, on April 30, 2025, the case transferred to the undersigned's docket. (Doc. 11). The Court promptly set a telephone conference to discuss Mason's motion for a TRO. (5/2/25 Notice). But the morning of that conference, Mason informed the Court by email that he could no longer attend. So, at his request, the Court vacated the conference. (5/8/25 Notice). He indicated that he was instead planning to file a request for leave to further amend his complaint to include new information and critical matters that he intended to raise at a future telephone conference. But that filing never came.[2]

Since then, the Magistrate Judge granted Mason's motion to amend, resulting in the filing of the Amended Complaint (Doc. 14), and then screened that Amended Complaint under § 1915(e). In connection with the latter, the R&R recommends that the Court dismiss the Amended Complaint (and thus deny all Mason's pending motions) because: (1) *Younger* abstention precludes any relief related to his criminal prosecution; (2) the domestic relations exception and the *Rooker-Feldman* doctrine prohibit the injunctive relief he requests concerning companionship rights; (3) his requests for declaratory relief regarding companionship rights are too vague; and (4) various immunity doctrines preclude his damages requests. (Doc. 13, #394).

---

[2] The Court briefly notes that even if it had been able to hold the TRO hearing, Mason's TRO motion requested relief the Court could not grant. First, he requested that the Court stay the pending state criminal proceedings, (Doc. 3, #124), which *Younger* abstention clearly precluded. *Younger v. Harris*, 401 U.S. 37, 44–45 (1971). Next, Mason asked the Court to both restore his court-ordered companionship rights with the children and enjoin enforcement of the no-contact order the juvenile court imposed. (Doc. 3, #124). But the *Rooker-Feldman* doctrine, which prohibits undo[ing]" or "overturn[ing]" state-court judgments in a new federal-court action, stripped the Court of jurisdiction to grant those two requests. *Hohenberg v. Shelby Cnty.*, 68 F.4th 336, 340 (6th Cir. 2023) (cleaned up).

The R&R also included a notice informing the parties that failure to object to its conclusions within fourteen days may result in forfeiture of certain rights, including the right to de novo review by this Court. *(Id.* at #395); *see Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed"); *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) ("[F]ail[ure] to file an objection to the magistrate judge's R & R ... [constitutes a] forfeiture." (emphasis omitted)). Mason did not object within the fourteen-day window.

## LEGAL STANDARD

The advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases). Consistent with that charge, the Court has reviewed the R&R and determined that it does not contain "clear error on [its] face." Fed. R. Civ. P. 72(b) (advisory committee notes).

The statute on which the Magistrate Judge relied, 28 U.S.C. § 1915(e), requires a court, at any time, to dismiss a case that it determines (1) "is frivolous or malicious," (2) "fails to state a claim upon which relief may be granted," or (3) "seeks monetary relief against a defendant who is immune from such relief." In making those assessments, the court analyzes a pro se complaint less stringently than one drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429

U.S. 97, 106 (1976)). But, notably, "[t]he liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010).

## LAW AND ANALYSIS

The R&R recommends dismissing Mason's Amended Complaint for various reasons—*Younger* abstention,[3] the *Rooker-Feldman* doctrine, the domestic relations exception, immunity doctrines, and failure to state a claim—based on the different forms of relief Mason seeks. While the Court ultimately agrees that it must dismiss Mason's Amended Complaint, it takes a slightly different tack in reaching that conclusion, focusing solely on the shortcomings in Mason's § 1983 *claims*, rather than on the deficiencies inherent in the types of *relief* Mason seeks.

A declaratory judgment "is not a cause of action, but a specific type of relief." *Duncan v. Tennessee Valley Auth. Ret. Sys.*, 123 F. Supp. 3d 972, 982 (M.D. Tenn. 2015), *aff'd in part and remanded sub nom. Duncan v. Muzyn*, 833 F.3d 567 (6th Cir. 2016). Same for an injunction. *FCA US LLC v. Bullock*, 446 F. Supp. 3d 201, 207 (E.D. Mich. 2020). So for Mason to be entitled to either form of relief, he "must first

---

[3] The R&R recommends abstaining from entertaining the declaratory and injunctive relief Mason seeks on *Younger* grounds. (Doc. 13, #375–77). But, based on the state-court docket, it appears the state trial court entered a judgment in Mason's criminal case on May 20, 2025. *See* Entry, *State v. Mason*, No. CRB2400225 (Vinton Cnty. Ct. Com. Pl. May 20, 2025). Mason's thirty-day deadline to appeal that judgment has since passed, *see* Ohio R. App. P. 4(A), and it does not appear that he appealed. At this point, then, the state criminal proceedings are no longer "ongoing," which means *Younger* abstention is no longer applicable. *See Carter v. Tennessee Dep't of Child.'s Servs.*, No. 3:22-cv-247, 2023 WL 2027804, at *4 (M.D. Tenn. Feb. 15, 2023) ("[A] state proceeding is ongoing for purposes of *Younger* until state appellate review is completed." (quoting *Williams v. Lubin*, 516 F. Supp. 2d 535, 539 (D. Md. 2007))).

8

[present] a cognizable cause of action." *Duncan*, 123 F. Supp. 3d at 982. The actions Mason asserts here all arise under § 1983. Ultimately, though, as the R&R correctly explains, all those § 1983 claims fail either because (1) that statute does not reach the relevant Defendant's conduct, (2) immunity doctrines preclude liability, or (3) Mason failed to state a claim for relief. And without a cognizable claim, the Court cannot grant the relief Mason seeks, whether its declaratory, injunctive, or otherwise.

With that background in mind, turn to the R&R's analysis regarding Mason's § 1983 claims.[4] Start with SCOJFS, Meadows, Clark, and Stilson. Mason cannot assert a § 1983 claim against any of them. SCOJFS is non sui juris, meaning it cannot be sued. *Loper v. Cuyahoga Cnty. Child. & Fam. Servs.*, No. 1:18-cv-1598, 2019 WL 1597552, at *2 (N.D. Ohio Apr. 15, 2019). And Meadows, Clark, and Stilson are not state actors for § 1983 purposes. (Doc. 13, #385–86 (citing *Maben v. Terhune*, No. 16-1025, 2016 WL 9447153, at *3 (6th Cir. Aug. 19, 2016); *Mulligan v. Schlachter*, 389 F.2d 231, 233 (6th Cir. 1968); *Newton v. Lairson*, No. 3:24-cv-P87, 2024 WL 1776395, at *2 (W.D. Ky. Apr. 24, 2024))).

Next, consider the immunity doctrines the R&R highlights. Judge Griffith, Judge Grillo, and Judge Williams are entitled to absolute judicial immunity for all the conduct Mason alleges. (*Id.* at #386–37 (citing *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991))). Bunstine—the guardian ad litem—is entitled to quasi-judicial immunity for his alleged conduct, which all arose "within the scope of [his] role[] as 'advocate[] for

---

[4] Because of the R&R's scrupulousness and the lack of objections from Mason, the Court only summarizes the law here.

9

the child[ren] in judicial proceedings.'" *Arsan v. Keller*, 784 F. App'x 900, 908 (6th Cir. 2019) (quotation omitted).[5] Sparks, Robson, and Hale—children's services social workers—likewise have immunity for their alleged conduct. "[S]ocial workers" are absolutely immune from suit when they act "in their capacity as legal advocates," *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 724–25 (6th Cir. 2011) (cleaned up), which includes "testimony or recommendations given in court concerning the children's best interests," *Holloway v. Brush*, 220 F.3d 767, 776 (6th Cir. 2000). As the R&R aptly explains, Bunstine's, Sparks', Robson's, and Hale's alleged conduct falls well within the contours of those immunity doctrines. (Doc. 13, #392–93).

Miller is likewise entitled to absolute prosecutorial immunity for most of her alleged conduct. Prosecutorial immunity extends to activity "falling within a prosecutor's role as advocate for the state and intimately associated with the judicial process." *Cunningham v. Dep't of Child.'s Servs.*, 842 F. App'x 959, 966 (6th Cir. 2021) (quotation omitted). So Miller—who is both a criminal and juvenile court prosecutor—receives immunity for allegedly charging Mason criminally, moving for pre-trial release conditions, filing various other motions and objections in the child custody case, and failing to turn over discovery. (Doc. 13, #388 (citing *Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997); *Cunningham*, 842 F. App'x at 966; and *Price v. Montgomery Cnty.*, 72 F.4th 711, 720 (6th Cir. 2023))).

---

[5] The R&R seems to conflate quasi-judicial immunity with immunity "akin" to prosecutorial immunity. (Doc. 13, #391–92). Under *Arsan*, Bunstine is entitled to the former type of immunity. 784 F. App'x at 908.

10

True, Mason also makes other allegations against Miller for which she does not receive immunity: (1) that Miller sent Mason various emails, which demonstrate a conspiracy to improperly coordinate the criminal and child custody proceedings and terminate Mason's companionship rights, and (2) that Miller failed to timely serve a court filing on Mason. (*Id.* at #389). But the lack of immunity doesn't matter because Mason has failed to plausibly allege those claims.

Take the emails, for example, which Mason says demonstrate a conspiracy. The R&R explains that those emails "show no plan or conspiratorial objective between Miller and the other Defendants," which is required to state a civil conspiracy claim under § 1983. (*Id.* at #389–90 (citing *Arsan*, 784 F. App'x at 914)). Mason therefore failed to state a plausible § 1983 conspiracy claim against Miller.

Turn to the alleged failure to serve court documents, which Mason seems to argue violated due process. Mason's problem here, as the R&R describes, is that he undermined his own claim. Mason admits that after he contacted the state court about Miller's alleged untimely service, Miller did in fact serve the filing. (Doc. 14, #410–11). So Mason did not plausibly allege that state remedies were inadequate to redress the alleged due process violation, which a § 1983 procedural due process claim requires. (Doc. 13, #390–91 (citing *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 587–88 (6th Cir. 2004))). This claim therefore fails, too.

In sum, Mason has presented no viable § 1983 claims. So the Court must dismiss his Amended Complaint, and in turn, all his other pending motions.

## CONCLUSION

For the reasons explained, the Court **ADOPTS IN PART** the R&R (Doc. 13), and **DISMISSES WITH PREJUDICE** Mason's Amended Complaint (Doc. 14). Because of that dismissal, the Court also **DENIES** Mason's other pending motions (Docs. 3, 4, 5, 6, 8, 10). The Court further **CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal of this Order would not be made in good faith, thereby **DENYING** Mason leave to appeal IFP. But as a non-prisoner, Mason may nonetheless apply directly to the Sixth Circuit Court of Appeals for leave to proceed IFP in that court, should he wish. Fed. R. App. P. 24(a); *Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999); *Miller v. Hudson*, No. 1:24-cv-098, 2024 WL 1704532, at *3 (S.D. Ohio Apr. 19, 2024), *appeal dismissed*, No. 24-3384, 2024 WL 3634240 (6th Cir. June 3, 2024). Finally, the Court **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on its docket.

      **SO ORDERED.**

July 17, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**